```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON


ROBERT J. THACKER,

        Movant,

v.                                   CASE NO. 2:08-cr-00196
                                     CASE NO. 2:10-cv-00780

UNITED STATES OF AMERICA,

        Respondent.
```

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 82, "Motion," signed version, # 90). Movant, Robert J. Thacker ("Defendant"), is serving a sentence of 60 months, upon his guilty plea to knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, in violation of 18 U.S.C. § 2423(b), to be followed by a ten-year term of supervised release. (Judgment in a Criminal Case entered May 19, 2009, # 72.) He was also sentenced to pay an assessment of $100. Id. He did not take a direct appeal.

The § 2255 Motion was filed with the Clerk on June 1, 2010, having been placed in the mail on May 27, 2010 (postmark, # 82, at 14). The original Motion was not signed; after an Order was entered, directing Defendant to correct the deficiency, Defendant filed a signed Motion (# 90). Accordingly, Defendant's Motion was

timely filed.

Facts of the Case and Procedural History

The facts are set forth in Defendant's presentence report ("PSR"). At age 33, Defendant (using the alias "Robbie Shaffer") began chatting over the internet with a 15-year old girl. (PSR, ¶ 10, at 4.) The internet contact continued until the summer of 2005, and evolved into conversations about sex. Id. In July, 2005, the girl's parents told Defendant in person to leave their daughter alone. Id. ¶ 13. In August, 2005, Defendant traveled from Ohio to West Virginia, picked up the girl, and drove her to Ohio where they engaged in sex acts. Id. ¶ 14. The girl's parents were able to get a message to Defendant and he returned the girl to her home. Id. ¶ 15, at 5.

The United States filed a complaint against Defendant on October 28, 2005 (# 1). He made an initial appearance on January 10, 2006, and was released on bond on January 13, 2006. (## 5, 6, 12, 13, 14.) The complaint was dismissed on February 8, 2006 (# 18).

The grand jury indicted Defendant on September 16, 2008 (# 19). Defendant signed a plea agreement on November 24, 2008, and entered a guilty plea on December 15, 2008 (## 46-50). Defendant provided the probation officer who was preparing his presentence investigation report ("PSR") with a written statement. The statement was incorporated in the PSR; it reads as follows:

```
     A girl I knew called and asked me to pick her up at her
     house.  She said she wanted to run off.  I wanted to run
     off with her too.  I knew she was underage.  I went from
     my home in Ohio to her house in West Virginia.  I knew
     that "run off" meant having sex with her.  I picked her
     up, drove around.  We had sex in the truck.  Then I got
     a call from Rhonda.  Rhonda told me to take her back
     home.  Rhonda said her dad was looking for her.  I took
     her home.  I feel bad, and I am sorry for everything that
     has happened.
```

(PSR, ¶ 21, at 6.)  Sentencing took place on May 18, 2009 (# 71).

<u>Ground for Relief and Positions of the Parties</u>

   Defendant raises two grounds for relief:

   Ground one: Ineffective assistance of counsel. My lawyer
   should have postponed by case because I wasn't mentally
   or medically sound to understand everything that was
   going on.  Also he did not use facts I gave him.  I gave
   him a receipt that shows I was at a different location.

   Ground two: My lawyer didn't advise me of my rights.
   Don't have a clue what that means.  At time of trial, I
   just had a stroke.  My lawyer just want to get me in and
   out as fast as he could to get paid.

(Motion, # 82, at 4-5.)

## **<u>ANALYSIS</u>**

   The undersigned will treat both grounds for relief together because his claim of ineffective assistance of counsel is based on his mental competence to enter a guilty plea.

   The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  <u>Id.</u> at 687-91.  There is a

strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. Id. at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. Id. at 697. In the context of a case in which a defendant pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th Cir. 1992).

The District Judge who took Defendant's plea, the Hon. Joseph

4

R. Goodwin, Chief Judge, entered an Order which states: "The court inquired of the defendant, both personally and through counsel, to determine the defendant's competency. The court found the defendant competent and capable of entering an informed plea." (Order entered December 15, 2008, # 47, at 1.)

A presentence investigation report ("PSR") was prepared in anticipation of sentencing. The applicable paragraphs of the PSR concerning Defendant's mental state read as follows:

> **Physical Condition**
> 42. Mr. Thacker . . . reported being hospitalized at St. Mary's Hospital, Huntington, West Virginia, for approximately one week for "stroke-like symptoms." At the time of the presentence interview, Mr. Thacker arrived in a wheelchair and was wearing a leg brace. Although these mobility devices were not prescribed or provided by a physician, he said he needed them to "get around." The defendant reported no medications to the probation officer that relate to his physical condition.
>
> 43. The defendant's physical condition is ambiguous. It was verified via the Social Security Administration that the defendant receives benefits for anxiety, "other related disorders" and borderline intelligence. He was hospitalized from November 3, 2008 to November 5, 2008, at St. Mary's Hospital. No discharge summary was completed because he was discharged within 48 hours. He arrived complaining of weakness on his left side, dizziness, a generalized headache and feeling like "pins and needles." It appears that neurological testing ruled out a stroke. The defendant was discharged with outpatient physical therapy but did not follow-up.
>
> **Mental and Emotional Health**
> 44. The defendant said he has suffered from depression, anxiety and panic attacks since the 1980's. He is reportedly treated at Shawnee Mental Health in Lawrence County, Ohio, by Dr. Joju Variath who prescribed him Zoloft and Zyprexa, which is confirmed.
>
> 45. Records from Shawnee Mental Health Center reveal the

5

defendant began treatment there in February 2006 after his mother referred him for "bad nerves." He was interviewed on two occasions for a total of 127 minutes by their Mental Health Specialist, Georgann Holbrook, MA, LSW. The records reflect Mr. Thacker presented his problems as seeing things and hearing things that others do not. He further stated that he can predict the future, often just by touching objects. He told the therapist he avoids touching people because then he can tell if they are good or bad or will do something good or bad. Mr. Thacker reported a family history of mental health issues. The defendant advised the clinician that he had received disability benefits since the age of 13, but did not know why. The clinician reported that initially the defendant appeared to be "blocking," but eventually spoke freely about the voices he hears. Ms. Holbrook's diagnostic impression was (1) Psychotic Disorder, Not Origin [sic? Otherwise?] Specified (NOS); (2) Anxiety Disorder (NOS); (3) Mood Disorder, (NOS); (4) Mild Mental Retardation; and (5) Schizotypal Personality Disorder.

46. Based upon his psychological testing, the defendant was referred for psychiatric evaluation and treatment [by] Dr. Joju Variath, M.D. Dr. Variath interviewed Mr. Thacker on June 29, 2006, and August 2, 2006. On June 29, 2006, Dr. Variath reported the defendant appeared to be having intermittent visual and olfactory hallucinations. The doctor observed the defendant "to be somewhat low functioning with a low IQ," for which he received disability. According to Mr. Thacker's statements to the doctor, he believed "aliens were out to get him." His diagnostic impression was: (1) Mood Disorder (NOS); (2) Psychosis (NOS); and (3) Major Depression, recurrent, with psychotic features. Dr. Variath treated the defendant with liberal dosing of Zyprexa and Zoloft to which he positively responded before the medications were eventually decreased.

47. Prior to his most recent hospitalization in November 2008, the defendant was briefly hospitalized at our Lady of Bellefonte Hospital, Ashland, Kentucky, in October 2008, after an apparent suicide attempt. His sister reported to his supervising pretrial services officer that she found him on approximately October 29, 2008, after he had tried to hang himself. Our Lady of Bellefonte provided medical records that indicate the defendant was admitted to the behavioral unit of that

    facility on October 31, 2008, for complaints of anxiety, depression and thoughts of suicide. He reported no prior hospitalizations for psychiatric problems. He was discharged on October 31, 2008, with a diagnosis of Major Depressive Disorder, severe, recurrent with suicidal thoughts.

    48. Based upon this information, the probation officer suggests that the defendant receive further evaluation with respect to depression and further suicide ideation.

(PSR, ¶¶ 42-48, at 8-10.) The PSR states that Defendant was interviewed by a Certified Sexual Offender Treatment Specialist for an evaluation of whether he poses a risk of re-offending. Id., ¶ 49, at 10. He scored as a low risk. Id., ¶ 51. The Specialist opined that despite his borderline intellectual functioning, Defendant could participate in counseling because he understood the wrongfulness of his conduct. Id.

Defendant began counseling in January, 2009. Id., ¶ 52. The counseling agency commented that Defendant has "difficulty understanding and answering certain questions until reviewed, a limitation in expressing cognitive processes and a deficit in understanding the diverse consequences of his offense." Id.

When Defendant was in school, he was placed in special education classes. Id., ¶ 54, at 11. He was tested as below average in cognitive functioning. Id. The tester noted that Defendant was deficient in communication, socialization, daily living skills and visual motor skills. Id.

Defendant was represented throughout the proceedings by Assistant Federal Public Defender Edward H. Weis, an exceptionally

7

able and experienced defense attorney, who displays strong empathy for his clients. Mr. Weis receives a salary for his representation of federal defendants; his pay is not dependent upon getting a client "in and out as fast as he" can. While it is plain that Defendant is intellectually limited, he recognized that his conduct with the girl was wrong and criminal. The PSR's thorough discussion of Defendant's physical, mental and emotional health establishes that Defendant's allegation that "at time of trial," he "just had a stroke," is erroneous. He was briefly hospitalized for "stroke-like symptoms" in early November, 2008; on October 29, 2008, Defendant's trial was continued to January 20, 2009 (# 36). Defendant's sentencing took place on May 18, 2009, after Defendant had undergone months of counseling and evaluation.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel with respect to his mental and physical soundness to participate in and understand the proceedings against him, and that it plainly appears from the motion and the record of prior proceedings that Defendant is not entitled to relief.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge deny Defendant's § 2255 Motion and dismiss this matter.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the

Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.

September 3, 2010                          /s/ Mary E. Stanley
    Date                                   Mary E. Stanley
                                           United States Magistrate Judge